J-S37002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C.K.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.S., MOTHER | : : : : : : : : | |
| | : | No. 1688 EDA 2021 |

Appeal from the Order Entered July 21, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0001581-2015

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED JANUARY 5, 2022**

K.S., the mother of six-year-old K.C.K.S. ("Child"), appeals from the order suspending her right to visit with Child. Mother contends the court failed to apply the required "grave threat" standard in evaluating the issue, and further, failed to consider less restrictive alternatives before suspending visits with Child. We affirm.

Initially, we observe that the order appealed from is not a final order under our Rules of Appellate Procedure. ***See Interest of L.B.***, 229 A.3d 971, 975 (Pa. Super. 2020). Nevertheless, as Mother properly notes in her statement of jurisdiction, this case involves a complete, indefinite suspension of her right to visit Child, and therefore qualifies for interlocutory appellate

---

[*] Former Justice specially assigned to the Superior Court.

review. *See id*., at 976-977. We therefore proceed to address Mother's appeal.

Child was brought to the attention of Philadelphia Department of Human Services ("DHS") based on reports that Mother had verbally and physically abused Child. Further, DHS had received reports that Child had inappropriately touched adult women. The court subsequently found Child to be dependent and placed him in foster care. In addition, the court found that aggravated circumstances existed because Mother's parental rights to four other children had already been terminated. The court granted Mother supervised visits with Child at the foster care agency, while directing her to participate in mental health treatment and drug screenings.

Over the next 21 months, Mother failed to participate in mental health treatment or drug screenings. While Mother's visitation with Child eventually became consistent, they were not without problems. Mother twice attempted to abscond with Child at the end of visits. Further, concerns arose over Child's behavior after these visits. After receiving evidence at a permanency review hearing that Child would display inappropriate sexual behavior and other disturbed behavior after his visits with Mother, the court entered the order suspending Mother's visitation with Child. This timely appeal followed.

Both of Mother's issues on appeal claim the court erred in suspending Mother's visitation rights. When reviewing dependency orders, we apply a deferential standard of review. The trial court's factual findings are binding

unless we can find no support for them in the record. ***See L.B.***, 229 A.3d at 977. In contrast, we are not bound by the trial court's inferences and legal conclusions. ***See id***. These we review for an abuse of discretion. ***See id***.

We address Mother's second issue first for readability purposes. Mother contends the trial court failed to utilize the "grave threat" standard when analyzing whether a complete suspension of visits was appropriate in this case. ***See*** Appellant's Brief, at 9. The "grave threat" standard would have required DHS to prove that Mother was unfit to associate with Child. ***See L.B.***, 229 A.3d at 974 n.3.

Whether the trial court was required to use the "grave threat" standard depends on what the permanency goal was at the time visitation was suspended. ***See In re C.J.***, 729 A.2d 89, 95 (Pa. Super. 1999). If the goal was reunification, DHS was required to establish a "grave threat" to Child in order to justify a suspension of visitation. ***See id***. In contrast, if the goal was no longer reunification, then suspension was justifiable if it was in the best interests of Child. ***See id***.

Here, the trial court explicitly utilized the best interests of Child as the standard when it imposed the suspension of visitation. ***See*** Trial Court Opinion, 9/17/21, at 8. The court did so even though the permanency goal at the time was reunification. It justified this conclusion by noting that it contemporaneously scheduled a goal change hearing when it filed the order suspending visitation. ***See id***.

We agree with Mother that this was an error. While the trial court was clearly ready to change the permanency goal for Child, it had not yet done so. It merely scheduled a hearing on whether to change the goal, which is not the legal equivalent of changing the permanency goal. As such, DHS was required to establish that Mother posed a "grave threat" to Child in order to suspend Mother's visitation.

Nevertheless, this conclusion does not require reversal. The trial court also concluded, in the alternative, that the evidence also supported a finding of a "grave threat" to Child. *See id*., at 9. In doing so, the court credited the testimony of the Community Umbrella Agency ("CUA") case manager. *See id.* The case manager testified Child "displays the most disturbed behavior … after his supervised visit[s] … with mother. The behaviors are very extreme, very sexual, sometimes can be very disrespectful, and all these behaviors are prompted by encouragement of mom." N.T., 7/21/21, at 8. The case manager testified that Child had told her that Child acts out like this "even though he knows it is wrong, because his mom asks him and tells him to do it, and he doesn't want to disappoint her." *Id*.

The court also credited the testimony of Child's foster mother. *See* Trial Court Opinion, 9/17/21, at 9. The foster mother testified that once Mother became consistent in visiting Child, Child's behavior started deteriorating. *See* N.T., 7/21/21, at 22. Specifically, Child became disrespectful towards his foster parents and began acting inappropriately at his daycare. *See id*., at 22-

24. She also noticed that Child often vomited after attending visits with Mother. *See id*., at 28.

Mother challenges the sufficiency of the testimony relied upon by the trial court. Mother correctly notes that much of this testimony is hearsay in nature. *See*, *e.g.*, N.T. 7/21/21, at 16 (CUA case manager admitting that her testimony about Mother's conduct at supervised visits came from third parties); *id.* at 17 (CUA case manager admitting that her testimony about Child's behavior at daycare came from foster parents, who heard it from daycare workers).

Mother concedes that this hearsay evidence was admissible at the permanency review hearing. *See* Appellant's Brief, at 10 (*citing* 42 Pa.C.S.A. § 6341). Nonetheless, she argues that this evidence could not form the basis for a finding that Mother posed a "grave threat" to Child, as she maintains that hearsay evidence, while admissible, cannot constitute clear and convincing evidence. *See In Interest of Coast*, 561 A.2d 762, 771-72 (Pa. Super. 1989) (holding that a complete denial of visitation requires clear and convincing evidence that the parent poses a grave threat to the child).

The trial court responds that Mother failed to preserve any objection to the hearsay nature of the testimony. *See* Trial Court Opinion, 9/17/21, at 11. We cannot agree that Mother has waived any objection to the nature of the testimony. There is no indication in the record that Mother was advised, prior to the hearing, that a complete denial of visitation was a possible result of the

permanency review hearing. As Mother notes, hearsay testimony is permissible at a permanency review hearing. *See* 42 Pa.C.S.A. § 6341(d). So, if Mother had objected to the testimony on hearsay grounds, that objection would likely have been overruled.

Nevertheless, we conclude that for the same reasons, the trial court did not abuse its discretion in considering the hearsay evidence. Under Section 6341(c), after a child has been found to be dependent, the court must schedule a prompt disposition hearing. *See* 42 Pa.C.S.A. § 6341(c). Section 6341(d) then provides that "in disposition hearings under subsections (b) and (c) all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." 42 Pa.C.S.A. § 6341(d)(1)(i).

While orders that completely deny visitation are arguably akin to findings of dependency, in that they are required to be made by clear and convincing evidence, we conclude their true nature is still dispositional in nature. They do not end a dependency matter. Section 6341 does not explicitly address them. And they are likely to arise, like here, from permanency review hearings, where hearsay evidence is likely to be admitted and considered.

Under these circumstances, we conclude that dependency courts can consider hearsay evidence when considering whether a parent poses a grave threat to the child. It may be the case that a finding of a grave threat based

solely on hearsay evidence constitutes an abuse of discretion. But that is not the case here.

The court also heard testimony that, other than visitation, Mother has not complied with any of the goals set forth in the reunification plan. *See* N.T., 7/21/21, at 10-11. Further, Mother has attempted to abscond with Child after visits at least twice. *See id*., at 10. Mother has refused inspections of her housing, *see id*., at 12, refused drug screens, *see id*., at 11, and failed to successfully complete parenting classes, *see id*., at 10.

In addition, Child's foster mother testified that, after Mother's visitation with Child became more consistent, she personally observed increased disrespect from Child towards herself and her fiancé. *See id*., at 21-2, 27-8. She has seen him searching through other people's purses and taking food from them. *See id*., at 28. Finally, she has noticed that Child often vomits after visiting with Mother, and often returns from visits with food Mother has given him. *See id*.

All of this evidence was not hearsay in nature, and clearly supports the trial court's conclusion that Mother poses a grave threat to Child's health and well-being. Even though the trial court also considered hearsay evidence in making its finding, it clearly did not rely solely on hearsay evidence. In fact, we conclude that even in the absence of the hearsay evidence, the non-hearsay evidence was sufficient to support the trial court's finding. Mother's

argument that the "grave threat" finding was supported by insufficient evidence merits no relief on appeal.

Finally, we turn to Mother's argument that the trial court erred by not considering less restrictive alternatives. Before suspending visitation, a trial court is required to consider less restrictive options such as therapeutic visitation. **See L.B.**, 229 A.3d at 977. Mother contends that therapeutic visitation or some other, less restrictive visitation scheme should have been considered by the trial court here. She highlights that no expert opinion was presented to support the denial of visitation, and that there was no evidence of what other supports were provided or could be provided to allow Mother to continue to have some limited form of visitation with Child. **See** Appellant's Brief, at 8.

While the trial court does not explicitly address this argument in its opinion, it is clear from the record that no therapeutic intervention or other support will protect Child from Mother. As noted above, Mother has refused all other therapeutic services offered by DHS and has refused to cooperate with DHS in every possible manner. Based on this record, there is no reason to believe that Mother would suddenly reverse course and welcome therapeutic support or any other assistance DHS offered. Mother's claim that other, less restrictive options were available is unconvincing.

As none of Mother's issues on appeal merit relief, we affirm the order suspending Mother's visitation rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/05/2022